## VILLANUEVA

v.

## COLUMBIA UNIVERSITY.

No. 89 Civ. 2240.

United States District Court, S.D. New York.

Feb. 28, 1990.

Eugene F. Reilly, New York City, for plaintiff.

Kay Scholer Flierman Hays & Handler, New York City, for defendant (Ruth A. Ihne, of counsel).

## ENDORSED MEMORANDUM

OWEN, District Judge:

Defendant Columbia University moves for summary judgment in this action alleging discrimination. Plaintiff Nora Villanueva claims she was terminated from Columbia's Sociomedical Sciences Ph.D. program due to her physical handicap of cerebral palsy. According to Columbia, plaintiff's participation in the program was terminated after faculty members who plaintiff had invited to be her exam readers genuinely concluded that she twice failed her written qualifying exam in sociomedical sciences research methods.

Plaintiff was admitted to the doctoral program in January 1983. She completed her course work and fulfilled the program's requirements by the spring of 1986, at which time she was required to take and pass four separate doctoral level qualifying exams before beginning a dissertation. The first is a written exam in sociomedical sciences research methods; a student who fails the written qualifying exam may take the exam again. However, the program may terminate a student who does not pass the second time.[1]

Plaintiff first took the written exam on April 11, 1986. Professors John Colombotos and Jack Elinson, the "readers" plaintiff chose to evaluate her exam, each concluded that plaintiff had failed the test.

---

**1.** The Graduate Programs in Sociomedical Sciences Student/Advisor Handbook for Doctor of Philosophy provides: "If a student does not pass the written examination, he or she will be al- lowed to take a second examination. If the examination is not passed on the second attempt, the student may not continue in the program."

Although she was encouraged to postpone a second attempt until she had adequate time to re-prepare, plaintiff scheduled her re-take on May 30, 1986. Each of plaintiff's readers determined she had again failed,[2] and the program's staff thereafter determined that plaintiff should be terminated from the program. Plaintiff protested this decision to various University administrators, all of whom, after independently reviewing her record, agreed with the program's determination.[3] Columbia ultimately granted plaintiff an MA degree based on the work she had done prior to her termination.

Although plaintiff asserts that her exams were of passing quality,[4] after ample discovery she is unable to proffer any evidence of discriminatory intent on the part of Columbia.[5] To the contrary, all of the documents and affidavits submitted by Columbia support the conclusion that the doctoral program's staff gave plaintiff a good deal of non-academic support during her matriculation period, and that plaintiff was terminated from the doctoral program because her work was unsatisfactory. Plaintiff not having demonstrated a genuine issue of material fact in support of her discrimination claim, defendant's motion is granted, and plaintiff's case is dismissed.

So ordered.

**2.** In a memo regarding plaintiff's performance on the exams, Dr. Colombotos stated: "Ms. Villanueva's answers on the April 11 exam, as well as those on the make-up exam taken on May 30, were not marginal or borderline. Her performance was clearly well below one that would justify a low passing grade." Dr. Elinson similarly concluded: "As second reader of Nora Villanueva's qualifying examination in sociomedical research methods, ... I found her examination to be unsatisfactory.... Reading her retake examination I found that to be disappointingly unsatisfactory also."

**3.** Plaintiff also brought her grievance to the New York State Division of Human Rights and the United States Department of Education Office of Civil Rights. Plaintiff's claims before the state agency were dismissed for lack of jurisdiction. Her federal complaint initially likewise was dismissed for lack of jurisdiction. A second complaint before the federal agency led to an investigation, after which the New York Regional Office for Civil Rights concluded that "although [plaintiff] is handicapped, she is not a qualified handicapped person with the meaning of Section 504 [of the Rehabilitation Act of 1973]" because she was not otherwise qualified to continue in or be readmitted to the doctoral program.

**4.** Plaintiff does not allege that she experienced any problem with the physical environment of the exam.

**5.** For example, on December 5, 1989, plaintiff's counsel inspected all non-privileged documents relating to plaintiff contained in the file maintained by defendant's Sociomedical Sciences Program office.